402

## THE McLAIN NO. 3.

## THE HAAKONSON NO. 3, Inc.

## THE THOMAS H.

### No. 14165.

District Court, E. D. New York.

Jan. 16, 1936.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libelant.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The libelant alleges that prior to April 20, 1932, the tug Thomas H. took the McLain No. 3, together with several other loaded boats, in tow from New York, bound for Buffalo; that after passing through lock 17 at Little Falls, N. Y., it remade the tow and again got under way for its destination at Buffalo. Negligent operation of the tug is then alleged, which caused the tow to swing out of the channel to rocks outside of the channel, and damage the McLain No. 3.

Wolahan, who proved a very intelligent and convincing witness, testified that he was captain of McLain No. 3 at the time of the accident. He said that shortly before April, 1932, the McLain No. 3 was hauled out on drydock; that he boarded her about March 3d for the opening of the canal season. The boat was loaded with scrap iron on the trip in question. Before the loading, he went through the boat and found no damage, nor were there any leaks. The McLain No. 3 is a barge canal boat, 100 feet in length, 30 feet beam, with a bow rounded at the corners. Loaded as she was, the barge drew 9 feet, 6 inches forward, and 9 feet, 8 inches aft. The other four boats in the tow were light and were drawing perhaps a foot and a half or two feet. After passing out of lock 17, the tow was in tandem formation, with the McLain No. 3 last. The tug was towing on two hawsers, about 85 or 90 feet in length. The barges were made fast to each other by lug lines, cross lines, and pull ropes. The bow of the McLain No. 3 was up flush to the stern of the forward boat. On the voyage the barges though equipped to steer were not rigged for steering, so that all they did was to follow the tug. They passed out of the lock at about 1:30 p. m. The weather was clear with a fairly strong breeze from the northwest. This wind struck on the starboard quarter of the barges. Proceeding up through the canal, as they got close to the lift bridge, the port shore was observed to be rock bound. Proper navigation required keeping to the starboard and not to the port side of the channel. Wolahan was at this time on the boat ahead of the McLain No. 3. As they proceeded in that vicinity, the tug was noticed to sag towards the port shore and a sudden crash on the barge was heard. The tow brought up for two or three minutes. The cross lines on the McLain No. 3 parted and water was heard rushing into the barge. The witness endeavored with the use of tarpaulins and the pump to cover the break, and he kept the pump working. At the time of the crash, the McLain No. 3 had run into the port bank. The tug then came back, put two hawsers on the McLain, and took her to the terminal, where she sank. Fox, master of the third boat in the tow, corroborated Wolahan.

Jewell, an engineer employed by the New York state department of public works, called by the respondent, testified that along the bank at which Wolahan claims the accident took place, the south side of the channel (the port side) is rough and irregular, both above and below the water line and that it is unsafe for boats to navigate within 10 or 15 feet of that side of the canal. He testified that when the water was drawn, in the spring previous to April 20, 1932, there were no obstructions in the channel, and that if the McLain No. 3 hit anything between lock 17 and the guard gate it was not in the

channel, unless something washed in from the operation of the guard gate. Of that there is no evidence.

 In the circumstances, the burden is on the tug to explain why the barge was stranded. The Nat Sutton (C.C.A.) 62 F.(2d) 787. See, also, The Reichert Line (C.C.A.) 64 F.(2d) 13. This burden the tug failed to meet, and indeed affirmative evidence leads to the conclusion that the tug drifted to the port shore carrying its tow with it, instead of keeping to the starboard wall.

The libelant may have a decree. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.